**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| THE PHILADELPHIA COCA-COLA BOTTLING COMPANY, | : : : | |
| Petitioner, | : : | |
| v. | : : | C.A. NO. 02-CV-3664 |
| UNITED BROTHERHOOD OF TEAMSTERS LOCAL NO. 830, | : : : : | |
| Respondent. | : | |

**MEMORANDUM OF LAW IN SUPPORT OF THE MOTION OF RESPONDENT, TEAMSTERS LOCAL UNION NO. 830, INTERNATIONAL BROTHERHOOD OF TEAMSTERS, AFL-CIO TO DISMISS THE COMPLAINT OF PETITIONER**

THOMAS W. JENNINGS, ESQUIRE
STEPHEN J. HOLROYD, ESQUIRE
**JENNINGS SIGMOND**
The Penn Mutual Towers, 16th Floor
510 Walnut Street
Philadelphia, PA 19106-3683

I.  **PROCEDURAL HISTORY AND RELEVANT FACTS**[1]

The Philadelphia Coca-Cola Bottling Company ("Petitioner") is a corporation with a principle place of business at 725 East Erie Avenue in Philadelphia, Pennsylvania. Petitioner is an independent bottler and distributor of Coca-Cola products (*see* Exhibit 1, Complaint at ¶1).

Certain of Petitioner's employees are represented for the purposes of collective bargaining by Teamsters Local Union No. 830, International Brotherhood of Teamsters, AFL-CIO ("Local 830"), a labor organization within the meaning of the Section 2(5) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. §152(5) (*see* Exhibit 1 at 2-3). This relationship has been embodied in a series of collective bargaining agreements, the most recent of which runs from April 15, 2000 through April 14, 2004 (*see* Exhibit 1, ¶¶6-7; *see also* Exhibit A of Petitioner's Complaint (attached as Exhibit 1)).[2]

Article XXI of the agreement contains a mandatory grievance and arbitration procedure, and reads as follows:

<u>GRIEVANCE – ARBITRATION</u>

a.  In the event of a grievance or dispute arising under the terms of this Agreement, the UNION steward shall take the matter up with the EMPLOYER'S representative, and every reasonable effort shall be made to reach a satisfactory solution. If no satisfactory solution can be reached, the Business Agent or other duly authorized representative of the UNION shall be notified by the UNION steward within five (5) working days of the event complained of, and the Business Agent or the duly authorized representative of the UNION shall take the matter up with the EMPLOYER within five (5) working days after the occurrence of the event complained of. If the Business Agent of the UNION and the EMPLOYER cannot reach a satisfactory agreement, the matter shall be submitted to arbitration pursuant to the American Arbitration Association's Labor Arbitration Rules.

---

[1]  For purposes of this Motion to Dismiss, Petitioner's pleaded facts are accepted as true. *Nami v. Fauver*, 82 F.3d 63, 69 (3d Cir. 1996). Respondent does not, however, admit that accuracy of these facts and specifically reserves the right to oppose these facts in pleadings, subsequent dispositive motions, and at time of trial.

[2]  It would appear that Petitioner's Exhibit A is incomplete, as it contains only the odd numbered pages of the document.

b. *The decision of the arbitrator shall be final and binding.* No arbitrator shall have the power to add to or subtract from the terms of this Agreement. The parties agree to expedite such arbitration.

c. The fee of the impartial arbitrator and the other costs of arbitration shall be borne equally by the UNION and the EMPLOYER.

d. It is expressly understood and agreed that any request for arbitration of a discharge of any employee must be made in writing by an official of the UNION to the EMPLOYER within fifteen (15) working days from the date of the discharge or it shall not be subject to arbitration. Upon a timely request for arbitration of a discharge, such arbitration shall be expedited pursuant to the procedures to be agreed upon by the EMPLOYER and the UNION.

e. In the case of any arbitration of a discharge, the arbitrator may sustain the discharge, or may order the reinstatement of the employee, and in the latter event may order the EMPLOYER to reimburse the employee with pay for days lost. As both parties pledge themselves to handle discharge cases promptly, it is agreed that in the event the arbitrator directs reinstatement of a discharged employee, no more than one hundred-twenty (120) days' lost pay shall be granted. In the event a case is not decided within 120 work days from the date of submission to the American Arbitration Association due to delay proven to be caused by the EMPLOYER, back pay (if awarded) shall run until the date of the decision.

(*see* Exhibit 1, ¶9; *see also* Exhibit A of Petitioner's Complaint at pp. 19-20 (emphasis added)).

On January 26, 2001, Joseph Brock, President of Local 830, filed a grievance and demand for arbitration challenging the manner in which Petitioner had been applying its policy governing leave under the Family Medical Leave Act of 1993 ("FMLA"). In particular, the grievance alleged that Petitioner's FMLA policy violated the collective bargaining agreement in that it required employees to use paid time concurrent with FMLA leave and forced changes in vacation selection, contrary to the vacation provision of the agreement (*see* Exhibit 1, ¶¶10-11). Ultimately, Walter DeTreux, Esquire, was selected by the parties to serve as the arbitrator (*see* Exhibit 1, ¶14).

A hearing was held on the grievance on October 23, 2001 and January 25, 2002. At the close of the hearing, the parties submitted briefs on April 2, 2002. During the hearing, Petitioner argued that the grievance was untimely and that, due to this "*procedural* flaw" (*see* Exhibit 1, ¶18 (emphasis supplied)), he need not address the merits of the case (*see* Exhibit 1, ¶18).

Arbitrator DeTreux issued his Memorandum and Decision on May 7, 2002 (*see* Exhibit B of Petitioner's Complaint (attached as Exhibit 1)). In his decision, the arbitrator found as follows:

> The grievance is sustained.
>
> As a remedy, the Employer is directed to immediately cease and desist from requiring employees to use paid leave time concurrent with FMLA leave unless and until such change in FMLA practice is negotiated with the Union. Further, the Employer is directed to make whole all affected employees for any loss to leave time as a result of the unilateral change in the FMLA practice.
>
> The arbitrator will retain jurisdiction for the purposes of resolving any dispute over the remedy ordered in this matter.

(*see* Exhibit B of Petitioner's Complaint (attached as Exhibit 1) at p.11).

In addition, the arbitrator ruled on Petitioner's untimeliness claim:

> I find that the Company's argument that the grievance is untimely is without merit. Article XXI of the contract requires the Union Business Agent to "take the matter up with the EMPLOYER within five (5) working days after the occurrence of the event complained of". It does not require that a formal written grievance be filed. Further, it does not require any time period before the matter is referred to arbitration.
>
> As stated in the previous discussion, [former Local 830 Vice President Sarah] Ruszin, upon receiving complaints from the members after the implementation of the change in FMLA policy, wrote a letter to [Employer Director of Labor Relations Luis] Fonseca, advising him of the complaints and, in effect, instituting her investigation. I find that Ruszin's August 9, 2000 letter started the grievance process, and therefore, the grievance is timely.

4

> Brock, Jr.'s January 26, 2001 letter formally reduced the grievance to writing (which is not required by the contract) and, by its own language, served as a "demand for Arbitration." Brock, Jr.'s letter was not the institution of the grievance procedure, but rather the continuation of the process started (and not adequately concluded) by Ruszin.
>
> I find the grievance to be timely.

(*see* Exhibit B of Petitioner's Complaint (attached as Exhibit 1) at 10).

Rather than comply with the award, Petitioner filed the instant action on June 7, 2002. However, Petitioner did not serve Local 830 with the Complaint until August 7, 2002. In the Complaint, Petitioner asserts that the decision and award must be vacated because it was "wrong," in that he found that the grievance was timely. As a result, Petitioner argues that the arbitrator "exceeded his authority," and that the award "does not draw its essence from the labor contract," simply because it disagrees with the arbitrator's finding that the grievance was, in fact, timely. Petitioner also argues that the award must be vacated because the arbitrator made "an error in fact." (*see* Exhibit 1, ¶¶21-25)

5

## II.   LEGAL STANDARDS

Rule 12(b) of the Federal Rules of Civil Procedure provides, in relevant part, as follows:

> Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-part claim, shall be asserted in the response or pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: *(1) lack of jurisdiction over the subject matter*, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, *(6) failure to state a claim upon which relief can be granted*, (7) failure to join a party under Rule 19.  A motion making any of these defenses shall be made before pleading if a further pleading is required.

F.R.C.P. Rule 12(b)(emphasis added).

A complaint or portion thereof may be dismissed by the Court under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  *Elliott v. State Farm Mutual Auto Insurance Co.,* 786 F.Supp. 487, 489 (E.D. Pa. 1992).  All or any portion of the complaint should be dismissed if it appears certain that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.  *Ransom v. Marrazzo*, 848 F.2d 398, 401 (3d Cir. 1988). In ruling upon a motion to dismiss, the court must primarily take into account the allegations of the complaint, but it may also consider exhibits attached to the complaint.  *Chester County Intermediate Unit v. Pennsylvania Blue Shield*, 896 F.2d 808, 812 (3d Cir. 1990).  In resolving a motion to dismiss, the court must accept as true all factual allegations contained in the complaint and must give plaintiff the benefit of every favorable inference that can be drawn from those allegations.  *Schrob v. Catterson*, 948 F.2d 1402, 1405 (3d Cir. 1991).  The court need not, however, accept as true any legal conclusions set forth in a complaint.  *Challenger v. Ironworkers Local No. 1*, 619 F.2d 645 (7th Cir. 1980).

### III. ARGUMENT: PETITIONER'S COMPLAINT MUST BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

#### A. The Scope Of Review

Attempts to overturn arbitration awards face a "well-established, consistent and exceedingly narrow standard of review." *Mitchell Plastics, supra* at 403, *citing United Industrial Workers v. Gov't of the Virgin Islands*, 987 F.2d 162, 170 (3d Cir., 1993)(scope of review is "narrowly circumscribed"); *Newark Morning Ledger Co. v. Newark Typographical Union*, 797 F.2d 162, 165 (3d Cir. 1986)(the "strict standard means that a reviewing court will decline to sustain an award 'only in the rarest case'"); *NF&M Corp. v. United Steelworkers*, 524 F.2d 756, 759 (3d Cir. 1975)("scope of judicial review of an arbitrator's award is severely limited").

This extremely limited scope of review is well-grounded in Supreme Court precedent. Courts are not permitted to reconsider the merits of a labor arbitration award, even if the award rests on errors of law or fact, due to the underlying federal policy which favors settling labor disputes by arbitration. *United Paperworkers Int'l Union v. Misco*, 484 U.S. 29, 36, 108 S.Ct. 364 (1987). As long as an award "draws its essence" from the agreement being interpreted, the court is required to uphold that award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358 (1960).

The test of whether an award "draws its essence" from an agreement is whether "the interpretation can *in any rational way* be derived from the agreement…; only where there is a *manifest disregard* of the agreement, *totally unsupported by principles of contract construction and the law of the shop*, may a reviewing court disturb the award." *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969)(emphasis supplied). "The test is a singularly undemanding one: 'as long as the arbitrator is even arguably construing or applying the contract

7

and acting within the scope of his authority,' his decision should not be overturned." *Lukens Steel Company, Division of Lukens, Inc. v. United Steelworkers of America, AFL-CIO, Local Union No. 1165*, 1991 U.S. Dist. LEXIS 9286 (E.D. Pa. 1991), *quoting Misco,* 484 U.S. at 38.

In determining whether an award can be rationally derived from an agreement, the court is to consider only the award itself, not the reasoning employed by the arbitrator. *Ludwig Honold*, 405 F.2d at 1132 ("It is not within the province of the reviewing court to agree or disagree with…the specific reasoning employed. Our sole function is to decide whether the arbitrator's interpretation met the test which the courts must apply in exercising the limited function of review in cases arising from labor arbitration.") Thus, even if this Court does not agree with the reasoning of the arbitrator, the award must be upheld if the result can in any way be derived from the agreement. *see, e.g., International Federation of Professional and Technical Engineers v. RCA Corp.*, 461 F.Supp. 957, 960 (E.D. Pa. 1978), *aff'd mem.*, 605 F.2d 1195 (3d Cir. 1979).

In collective bargaining agreements it is the arbitrator's judgment "and all that it connotes that was bargained for." *Misco*, 484 U.S. at 37 (*quoting Enterprise Wheel,* 363 U.S. at 567-568). By the same token, "where it is contemplated that the arbitrator will determine remedies for contract violations that he finds, courts have no authority to disagree with his honest judgment in that respect." *Id.* at 38.

### B. Petitioner's Complaint Must Be Dismissed

Notwithstanding the clear and well-established standards adopted by this Court, the Supreme Court of the United States, and the Court of Appeals for the Third Circuit, Petitioner brings this Complaint to vacate an award relying on nothing more than a claiming that the

arbitrator was "wrong" in that he made an "error in fact" in concluding the grievance was timely. Petitioner's efforts fall woefully short of establishing a claim to vacate the award.

As is clear even from Petitioner's own pleadings, the issue before the arbitrator in regard to timeliness was one of "procedural arbitrability" (*see* Exhibit, ¶18 ("due to this fatal *procedural* flaw")). While matters of *substantive* arbitrability, i.e., whether the parties contracted to arbitrate grievances, are clearly issues for the courts, *see, e.g., AT&T Technologies v. Communications Workers of America*, 475 U.S. 643, 649, 106 S.Ct. 1415 (1986), it is well-established that matters of *procedural* arbitrability are to be resolved by arbitrators, and *not* by the courts. *International Union of Operating Engineers v. Flair Builders, Inc.*, 406 U.S. 487, 92 S.Ct. 1710 (1972). *See also Whittle v. Local 641, International Brotherhood of Teamsters*, 56 F.3d 487, 490 n.2 (3d Cir. 1995)("Timeliness is a procedural issue, and in an arbitration proceeding, procedural issues are for the arbitrator to decide").[3]

In this case, the arbitrator was presented with a question of procedural arbitrability, i.e., whether the underlying grievance was timely, and he found that it was. Stated simply, this is the end of the inquiry: procedural questions which grow out of the dispute and bear on its final disposition are the exclusive province of the arbitrator and his rulings must not be disturbed by a court unless the arbitrator's error in "in bad faith or so gross as to amount to affirmative misconduct." *Misco* at 40.

Petitioner's attempts to rely on the "error of fact" in the arbitrator's decision do not change this result. In this regard, Petitioner notes that the arbitrator found that the change in the

---

[3]     Indeed, by presenting the issue of arbitrability to the arbitrator in the first instance, Petitioner has waived its right to have the Court make any determination of arbitrability, even if it attempts to frame the issue as "substantive," rather than "procedural." *See, e.g., Vic Wertz Distributing Company v. Teamsters Local 1038*, 898 F.2d 1136 (6th Cir. 1990).

It must also be noted that Petitioner waived any right to challenge to timeliness of the grievance by agreeing to allowing an unfair labor practice charge filed by Local 830 with the National Labor Relations Board to

FMLA policy occurred in June 2000, and that the grievance was filed on August 9, 2000. Thus, based on these findings, Petitioner argues that the arbitrator made an error of fact in concluding that the grievance was, in fact, timely.

For the purposes of this motion, the Court must accept as true all factual allegations contained in the complaint. As a result, it must be presumed, for the sake of this motion, that the arbitrator did, in fact, commit an "error of fact" in concluding that the grievance was timely. This "fact," however, does not warrant the vacating of the award by this Court. As noted above, courts are not permitted to reconsider the merits of an arbitration award, even if the award rests on errors of fact, due to the underlying federal policy favoring the settling of disputes by arbitration. *Misco, supra*. Indeed, courts are not free to vacate an award even where it is convinced that an arbitrator has committed "serious error" in making his findings. *Id.* at 38. While the arbitrator may have erred in doing his math here, this error, standing alone, does not warrant the vacating of the his award.[4]

Similarly, Petitioner's broad swipes at the award, couched in terms of legal conclusions such as the decision "is wrong as it does not draw its essence from the labor contract (*see* Exhibit 1, ¶23) must also be rejected. First, it must be recalled that this Court need not accept as true legal conclusions contained in the Complaint. *Challenger, supra*. Second, as noted above, the test of whether an award "draws its essence" from an agreement is whether "the interpretation can *in any rational way* be derived from the agreement." *Ludwig Honold Mfg. Co., supra*

---

be deferred to the arbitration process under the principles set forth in *Collyer Insulated Wire*, 192 NLRB 837 (1971) and *United Technologies Corp.*, 268 NLRB 557 (1984)(*see* Exhibit 1, ¶¶12-13).

[4]    It must be noted that, while the arbitrator found that the change in policy was done in June of 2000, he did *not* specifically find that Local 830 was aware of the change at that time. Rather, he held that a Local 830 official timely filed a grievance "upon receiving complaints from the members after the implementation of the change in FMLA policy." (*see* Exhibit B of Petitioner's Complaint at 10). Thus, it can be argued that the arbitrator found, *sub silentio*, that the grievance was timely filed because it was done within 5 days after the Local 830 official received the members' complaints. In any event, it is not clear that the arbitrator's finding was an "error of fact"; regardless, it certainly is not "bad faith" or "so gross as to amount to affirmative misconduct." *Misco, supra*.

(emphasis added).  In determining whether an award can be rationally derived from an agreement, the court is to consider only the award itself, not the reasoning applied by the arbitrator.  *Id.* at 1132.  Thus, even if this Court does not agree with the reasoning of the arbitrator, the result must be upheld if the result can *in any way* be derived from the agreement.  *See, e.g., International Federation of Professional and Technical Engineers v. RCA Corp.*, 461 F.Supp. 957, 960 (E.D. Pa. 1978), *aff'd mem.* 605 F.2d 1195 (3d Cir. 1979).

Here, the arbitrator did *not* find that Local 830 had knowledge of the change in the FMLA policy in June 2000.  All he found was that that was the date Petitioner changed its policy.  In finding that the grievance was timely, the arbitrator *did* find that a Local 830 official filed the grievance in a timely manner after receiving complaints from members.  Although the arbitrator does not make a specific finding as to when those complaints were received, it can *rationally* be concluded that he determined that the complaints were received within the 5 day window described by the collective bargaining agreement.  Since a *rational* basis exists for his conclusion, it draws its essence from the contract and cannot be disturbed.  *See News America Publications, Inc. v. Newark Typographical Union, Local 103*, 918 F.2d 21, 24 (3d Cir. 1990)("there must be absolutely *no support at all* in the record justifying the arbitrator's determinations for a court to deny enforcement of an award" (emphasis added)).

## IV.    CONCLUSION

Accordingly, based on the foregoing facts and authorities, Local 830 respectfully requests that this Honorable Court dismiss Petitioner's Complaint with prejudice.

Dated at Philadelphia, Pennsylvania this 9th day of September, 2002.

                Respectfully submitted,

                _____

                THOMAS W. JENNINGS, ESQUIRE
                STEPHEN J. HOLROYD, ESQUIRE
                **JENNINGS SIGMOND**
                The Penn Mutual Towers, 16th Floor
                510 Walnut Street
                Philadelphia, PA 19106-3683
                (215) 351-0670

## **CERTIFICATE OF SERVICE**

I, Stephen J. Holroyd, Esquire, state under penalty of perjury that I caused a true and correct copy of the foregoing Memorandum of Law In Support of Respondent's Motion to Dismiss to be forwarded by U.S. Mail, First Class, postage pre-paid this 9th day of September, 2002 to:

> Michael G. Tierce, Esquire
> Stevens & Lee
> 1818 Market Street, 29th Floor
> Philadelphia, PA 19103

_____
STEPHEN J. HOLROYD